## H. H. Dutton, J. A. Baker and L. G. Baker, Trustees of Ivanhoe Lodge, I. O. O. F. No. 432, Appellants, v. Abner Pyle and Thomas B. Brown, trading as Pyle & Brown.

*Guaranty—Mortgage—Condition precedent to recovery.*

In an action on the guaranty of a mortgage it is essential that the plaintiff show that, within a reasonable time after default on the mortgage, he sought to collect the debt from the land or from the debtor, or that he produce evidence which would warrant a jury in finding that such a course would have been idle.

Argued Feb. 6, 1900.  Appeal, No. 28, Jan. T., 1900, by plaintiffs, from order of C. P. Chester Co., Oct. T., 1898, No. 20, refusing to take off nonsuit.  Before GREEN, C. J., McCOLLUM, MITCHELL, DEAN and BROWN, JJ.  Affirmed.

Assumpsit upon a parol guaranty.  Before BUTLER, J.

The court entered a compulsory nonsuit which it subsequently refused to take off, BUTLER, J., filing the following opinion :

The plaintiff sought to recover from the defendants upon the alleged guaranty of certain Kansas mortgages.  According to their statement filed and attitude upon the trial, they depended on a contract of guaranty and not of suretyship.  Thus it was essential to the right of plaintiffs to recover that they should have shown that, within a reasonable time after their right accrued to collect the debts guaranteed, they sought to collect from the land and the debtors, or to have produced evidence which would have warranted the jury in finding that such a course would have been idle ; would not have resulted favorably.

The plaintiffs' right of action on one of the obligations in suit matured in September, 1890, on one in September, 1891, and on the third in October, 1891.  On these dates interest payments were defaulted, and by the terms of the obligations interest and principal sums became unconditionally collectible. From these dates to the time of the trial of this suit, the plaintiffs admitted they had taken no steps to collect from the land liened nor from the obligors.  Manifestly, therefore, the burden was on the plaintiffs to offer evidence that would have justified the jury in finding that within a reasonable time after 1890 and 1891, neither the lands bound nor the obligors were worth pursuing.  This we think the plaintiffs wholly failed to do.  And this, notwithstanding the fact that if the situation did exist, which plaintiffs were called upon to demonstrate, they could have readily established it, through depositions or otherwise, by direct and proper proofs.  No such proofs were offered.  The plaintiffs relied upon a statement alleged to have been made by Abner Pyle in the course of his testimony in the trial of a suit for libel brought against W. S. Harris, Esq., to

the effect that he would not give $25.00 for the obligations; upon the fact that the lands covered by the mortgages were by 1894 sold for taxes; upon the testimony of Thomas B. Brown that the Kansas Mortgage Company did not undertake to live up to its contracts of guaranty because the demands upon it were so great that they overwhelmed it; and upon the answers of one of the plaintiffs as to why they did not proceed upon the primary obligations.

If proof of the disconnected statement of Abner Pyle made in a libel suit, the issue being wholly foreign to the matters between the parties to the present suit, could, under any circumstances, substantially avail the plaintiffs, it could not do so here. The report of the arbitrators who heard and disposed of the libel suit was filed, as the records show in October of 1895. It follows that the alleged statement of Abner Pyle, if competent to support any conclusion as to the worth of the obligors or their lands, would tend to establish the situation late in the year 1895, a date too remote from the period of inquiry to avail the plaintiffs.

The proof that by 1894, the lands covered by the mortgages had been sold for unpaid taxes, could not justify the conclusions either that no money could have been collected by foreclosure, or that the obligors were insolvent. Indeed, the fact that the Kansas Mortgage Company, which was responsible to the plaintiffs under a guaranty written on the bonds, were the purchasers at the tax sales of the lands bound by the mortgages, is rather an indication that it was believed they had value and were worth attention. And the fact that the obligors permitted the lands to go to tax sales neither tends to prove that they were valueless nor that the obligors were insolvent. If the real estate was probably worth the sums borrowed, but offered no substantial equities to the mortgagors, they might reasonably abandon interest in them and pursue the course followed by them here.

The testimony of Thomas B. Brown was not to the effect that the mortgages in suit were worthless and that to have lived up to the contract of guaranty as to them would have swamped the Kansas Mortgage Company. His testimony in this connection was to the effect that the claims upon the company generally were so extensive and colossal that it could not live up

to the precise terms of its contracts of guaranty, and was driven to the position of seeking merely to aid such persons as hold its guaranty and were willing to enter into the scheme, in making their money ultimately out of the lands mortgaged. This testimony shed no light upon the worth of the particular mortgages or mortgagors involved in the present inquiry.

The testimony of L. G. Baker, one of the plaintiffs, did not present any legitimate proof as to the probable results of proceedings against the original obligors. It purported at most to give the plaintiffs reason for their individual belief that nothing could have been accomplished. It involved nothing that constituted legitimate proof of the actual fact touching the worth of the lands or the obligors.

Not only was no testimony produced by the plaintiffs that would have justified the jury in finding that it would have been futile for them to have pursued the lands or the obligors, but on the other hand proofs were made in their case which tended affirmatively to show that in the cases of at least two of the obligations pursuit of the remedies therein provided would probably have resulted in payment of the debts. It was developed by the plaintiffs that in 1894 the obligors in the Hirst loan were residing in the vicinity of the mortgaged premises upon a farm belonging to one of the obligors, and it was developed that the plaintiff's counsel, then representing the plaintiffs, in 1894, purchased for the plaintiffs the tax title of the land bound by the Brittain mortgage, it being stated at the time that the plaintiffs had investigated the value of the land and were satisfied that they would get more than their claim out of it.

This proof standing alone, as it does, with nothing to throw further light upon the value of the Hirst and Brittain obligations at that time, tends to establish that as a fact these obligations were valuable. We think the nonsuit was properly entered and must refuse to take it off. The rule is dismissed.

*Error assigned* was refusal to take off nonsuit.

*W. S. Harris,* for appellants, cited Cooke v. Nathan, 16 Barb. (N. Y.) 342.

*Thomas W. Pierce* and *Alfred P. Reid,* for appellees, were not heard.

PER CURIAM, February 19, 1900:

The judgment in this case is affirmed on the opinion of the learned court below on the motion to take off the nonsuit.